T. B. Larue et al., Commissioners of Venango County, v. The Oil City Street Passenger Railway Co., John B. Smithman, President, N. H. Brown, E. S. Laughlin, E. M. Wolfe and David Laughlin, Directors, Appellants.

*Bridges—County bridges—Duty of county.*

Where a county purchases a bridge from a municipality it becomes liable for the safety of the bridge as a part of the public highway, and it is

clothed with all powers necessary to enable it to regulate the public use. of the bridge so far as its own protection and the safety of those using it may require, but it is bound to keep it open, and in good repair, and cannot close it against the public as an owner might close his house.

*Street railways—Bridges—Municipal consent—Exclusion of public.*

A street railway company which has received the consent of the local authorities to construct its tracks upon a bridge, has no right to exclude the public from the use of the bridge which forms a link in the street or highway on which it is erected, or to so use the bridge as to render it unsafe for public travel.

If the bridge is either of insufficient strength, or of insufficient capacity to accommodate the general public travel, and also the street railway company's cars, and cannot be so strengthened or enlarged as to do so, the local authorities are not bound to provide the street railway company with a suitable viaduct or other means of crossing the stream at the point where the bridge is situated.

*Street Railways—Bridges—Equity—Injunction.*

On a bill in equity to restrain a street railway company from laying its tracks upon a county bridge, where the evidence tends to show that, unless the bridge is materially strengthened and enlarged, it will be neither safe, nor of sufficient capacity to accommodate both the general travel of the public and the street railway, a preliminary injunction which has been granted to restrain the use of it by the company will be continued.

If the county authorities arbitrarily refuse their consent to the use of a county bridge in a city by a street railway company, on the ground that the bridge will be rendered unsafe for public use, the court may appoint an engineer to examine and report what will be necessary to strengthen the bridge for street railway traffic, and, upon the filing of his report, the court may permit the street railway company to enter upon the bridge and strengthen it, and when this has been done to the satisfaction of the court, the company may use the bridge for the purposes of its business, upon giving security to keep it in repair, pay the rental agreed upon, and perform the conditions upon which the municipal consent was given. Berks County v. Reading City, 167 Pa. 118, approved.

Argued Oct. 5, 1894. Appeal, No. 271, Oct. T., 1894, by defendants, from decree of C. P. Venango Co., continuing preliminary injunction. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain a street railway company from laying its tracks upon plaintiffs' bridge.

The bill averred in substance that complainants were the commissioners of the county, and as such had the exclusive

control and management of the county bridges; that it was their duty to keep the bridges safe and in proper repair for the ordinary use of the public without obstructions of any kind; that the bridge over Oil creek, in the city of Oil City, Venango county, belongs to said county; that it was erected by the borough of Oil City, under the provisions of the act of assembly of February 27, 1865; that said bridge was purchased from the borough by the county under the act of assembly of April 6, 1870; that since its purchase, neither the borough officers nor the official representatives of the city, nor any person, has at any time exercised any control over the bridge, nor attempted to do so; that the said bridge is the only free bridge crossing Oil creek in the business portions of the city; that it is used continuously by the public, in vehicles and on foot, and is taxed nearly if not quite up to its capacity for said uses, without the additional burden of a street railway traffic, and that the use of the bridge by such railway would endanger life, property and the bridge itself; that the Oil City Street Railway Company was organized under the provisions of the act of May 14, 1889; that said company uses electricity with overhead wires and the trolley system as its motive power; that permission was asked of the commissioners for leave to use the bridge in the running of their cars over the same, etc., but such request was refused; that about four o'clock in the morning of May 17, 1894, without the permission of the commissioners, the defendants entered upon the bridge and laid their tracks there, and fastened their trolley wires upon the bridge, etc; that the rails do not connect with the track of the railway; that at the western end of the bridge the rails are laid to within about fifty feet of the bridge, and at the eastern end there has been no track laid; that as soon as the complainants had knowledge of the railway's occupancy of the bridge they notified them to stop all further work thereon and to remove the rails and obstructions from the bridge, which they refused to do. The bill contained a minute description of the bridge, a statement of its strength, the weight of the cars, etc., and the danger to be apprehended.

The prayer was for a preliminary injunction, to be made perpetual, restraining the defendant company from the use of the bridge for their street railway traffic; from connecting the

rails and wires upon the streets, and from interfering with the complainants in their management and control of the bridge, and doing such work thereon as they might deem necessary and proper for the preservation of the bridge and the safety of the public in its ordinary use.

Defendants in the answer admitted that the bridge was not strong enough for the ordinary use of the public, and that it would not be strong enough with the street car traffic added thereto. They averred that they did not intend to use or run their cars over the same until it should be so strengthened as to make it perfectly safe for such use; that they had proposed to the complainants to make the necessary changes or additions at their own expense. They admitted that they intended to use the bridge for street car traffic. They also admitted their request to the county commissioners for permission to use the bridge, and the refusal of such request; but denied that the commissioners had any valid power to grant or refuse. They averred that they had the permission of the city authorities, and that the city authorities were the " local authorities " under the act, etc., and admitted that the commissioners were charged with the duty of maintaining the bridge.

The evidence showed that the bridge, unless materially strengthened and enlarged, was neither safe nor of sufficient capacity to accommodate both the general traveling public and the defendant company.

The court in an opinion by TAYLOR, P. J., continued the preliminary injunction.

*Error assigned* was above decree.

*C. Heydrick, Wm. McNair, F. W. Hays* and *Carl I. Heydrick* with him, for appellants.—The defendant company, by virtue of the act of May 14, 1889, its articles of association made in pursuance thereof, and the ordinances of the city of Oil City, has the right to lay its track upon and run its cars over the bridge in question: Laramie County v. Albany County, 92 U. S. 307; act of May 14, 1889, P. L. 211; 6 Mod. R. 225; Erie County v. Com., 127 Pa. 197; Com. v. Central Bridge Co., 12 Cush. 242; Washer v. Bullitt County, 110 U. S. 558; City of Chicago v. Powers, 42 Ill. 169.

The county commissioners have no standing to maintain this suit: Erie County v. Com., 127 Pa. 197.

The county of Vanango is not liable for the maintenance of this bridge: Com. v. Commissioners of Monroe County, 2 W. & S. 495; act of April 13, 1843, P. L. 231.

*C. A. Myers* and *James Denton Hancock*, for appellees.—The Oil City Street Railway Company, under its charter and ordinance of the city of Oil City, does not have the right to lay its tracks upon and run its cars over the bridge in question: Com. v. Erie & North Eas. R. R., 27 Pa. 339; Penna. Ry. Co.'s App., 115 Pa. 514; Pass. Ry. v. Pass. Ry., 8 Pa. C. C. R. 273; Phila. v. Pass. Ry. Co., 10 Pa. C. C. R. 16; Larimer & L. St. Ry. v. Larimer St. Ry., 137 Pa. 533; 1 A. & E. Ency. of Law. 541; Road from Fitzwater St. to Shippen St., 4 S. & R. 106; Phila v. Ry., 10 Pa. C. C. 211; Rapho v. Moore, 68 Pa. 404; act of June 13, 1836, P. L. 555; Towando Bridge Co., 91 Pa. 216.

The commissioners have a standing to maintain this action: Act of Feb. 27, 1865, P. L. 729; act of April 6, 1870; Bedford Turnpike Road v. Commissioners of Franklin County, 6 S. & R. 227; Broomall's App., 75 Pa. 175; Larimer & L. St. Ry. v. Larimer St. Ry., 137 Pa. 533; Norristown v. Ry. Co., 148 Pa. 87; Mayor v. Bolt, 5 Ves. Jr. 120; Sampson v. Smith, 8 Simons, 272; Spencer v. London Ry., 8 Simons, 293; Hepburn v. Lordan, 34 L. J. (N. S.) 293; Trustees v. Cowen, 4 Paige Ch. 514; Heart v. Mayor of Albany, 9 Wend. 571; Biddle v. Ash, 2 Ash. 220; Moyamensing v. Long, 1 Parsons, 143; Frankford Borough v. Lennig, 2 Phila. 403; Penna. R. R. v. Grain Elevator Co., 14 Wr. 499; Pass. Ry. v. Pass. Ry., 3. Phila. 164; Clark v. Second & Third Sts. R. R., 3 Phila. 259; City v. Lomard & South Street Co., Leg. Int. May. 29, 1863; p. 173; 13th & 15th Sts. Pass. Ry. v. Phila, 8 Phila. 648; Phila. v. Pass. Ry., 151 Pa. 128; Sterling's App., 111 Pa. 85.

The county is not on trial for maintaining an insecure bridge, neither has it asked this company to enter on the bridge or held out inducements for it to do so nor to strengthen it: Covington etc. v. Bridge Co., 50 Am. & Eng. R. R. Cases, 395.

In discovering the legislative intent, the courts have now defined it as a settled principle of law that where land or other

property has been devoted to a public use, it cannot be appropriated to another public use inconsistent, either in the expression of the law granting such appropriation or in its application, with the former public use, unless such appropriation of such land or property shall be expressly granted or the authority therefor shall arise from a necessity so great as to construe otherwise would be practically to set aside the power granted under the law: Groff's App., 128 Pa. 621; Penna. R. R. Co.'s App., 93 Pa. 150; Boston & M. R. R. v. Lowell & L. R. Co., 124 Mass. 368; Prospect Park & Coney Island R. R. v. Williamson, 21 N. Y. 552; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Sharon Ry. Co.'s App., 122 Pa. 533; Pittsburg Junction R. R. v. Allegheny V. R. R., 146 Pa. 297.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 7, 1895:

This appeal is from a preliminary injunction granted on bill and affidavits, and afterwards " continued until final hearing on the merits." The bill, filed by the commissioners of Venango county against the defendant company, its president and directors, substantially avers that the county of Venango owns a certain bridge, over Oil creek within the corporate limits of Oil City, which was erected by the then borough of Oil City, under a special act of assembly, and was afterwards purchased by said county in pursuance of another special act; that the defendant railway company has commenced to construct its railway upon said bridge for the purpose of running its cars over the same after having been refused permission by plaintiffs to do so; that said bridge is not of sufficient strength for that purpose, and, in consequence of its insufficiency in that regard, there is great danger of serious accident to life and property from such use of the bridge, etc., and prays that the company, its officers and agents may be restrained from running street cars on the bridge, from making any alterations, changes or additions thereto, and also from obstructing the plaintiffs in their control and management thereof and doing such work as they may deem necessary thereon, etc.

It is unnecessary to refer at length to the special legislation under which the bridge in question was originally built and afterwards maintained as a toll bridge until it was sold by the borough of Oil City to the county of Venango. The details of

that legislation will be found in the act of February, 1865, P. L. 729, supplement thereto of March 10, 1865, P. L. 731, and general laws for the protection of bridges, etc., which were made applicable to said acts. By the second section of the supplement the town council of the borough was authorized "to collect toll from all persons except foot passengers, using said bridge, until the proceeds arising from said tolls will liquidate the bonds" that were issued to pay for the construction of the bridge. As required by the act of 1870, P. L. 997, under which it was purchased by the county, the bridge was declared "free of all tolls for all purposes thereafter." By that purchase, the county became the owner of the bridge as fully to all intents and purposes as if it had been erected by the county under the general law relating to county bridges. The burden of maintaining the bridge was thus shifted from the borough to the county at large. As was said in Berks County v. Reading City, etc. Cos., 167 Pa. 118, the county thus became liable for its safety as a part of the public highway; and in consequence of the duty thus cast upon the county, it is clothed with the powers necessary to enable it to regulate the public use of the bridge so far as its own protection and the safety of those using it may require. The county cannot close it against the public as an owner might close his house. It is bound to keep it open and in good repair, etc.

There appears to be no question as to the validity of defendant company's charter. So far as they had the power to do so, the proper "local authorities" of the city within whose limits the bridge is located appear to have given their consent, in due form, as required by the constitution; and, so far as the streets designated in its charter are concerned, the company's right to proceed with the construction and operation of its road, with due regard to the rights of the general public therein, is not questioned by anyone, as the case is now presented. But, that does not give the defendant company the right to exclude the public from the use of the bridge which forms a link in the street or highway on which it is erected, or to so use the bridge as to render it unsafe for public travel. If the bridge is either of insufficient strength or of insufficient capacity to accommodate the general public travel and also defendant company's cars and cannot be so strengthened or enlarged as to do so,

it is very clear that neither the city nor the county at large is bound to provide the defendant with a suitable viaduct or other means of crossing Oil creek at the point in question. It may be that there are kindly disposed municipalities who gratuitiously open, grade and pave streets, and bridge streams for the accommodation of street railway companies, but they are certainly under no legal obligation to do so. As the case is now presented, the evidence tends to show, what is practically conceded, that unless the bridge in question is materially strengthened and enlarged, it is neither safe nor of sufficient capacity to accommodate both the general traveling public and the defendant company.

If that is found to be so, the question will be whether it is practicable to so enlarge or strengthen the bridge, or both, as to safely and conveniently accommodate all parties concerned. If it is found to be practicable to do so, and the parties litigant cannot come together and agree upon a proper mode of accomplishing that result, the only remedy appears to be something similar to that suggested in the supplemental opinion and decree in Berks County v. Reading City, etc. Cos., 167 Pa. 118.

In view of what has been so well said on the general subject by our Brother WILLIAMS, in the case above referred to, we think that further elaboration is neither necessary nor desirable. The case goes back for further hearing and final decree, and sufficient has been said to indicate the course to be pursued in case the controlling facts are found to be as now suggested by the record.

We are not prepared to say there was any error in continuing the preliminary injunction. The appeal is therefore dismissed, and it is ordered that the record be remitted to the court below for further proceedings. Costs to abide the result of the final decree.