## Citizens' Traction Company, Appellant, *v.* Shaffer.

*Bridges—County bridges—Use by street railway company.*

1. Where county commissioners in building a county bridge take into consideration the fact that it is to be occupied by a street railway company, and therefore build it of greater width and strength than would have been required had it been designed only to accommodate travel by foot passengers and ordinary vehicles, the street railway company which subsequently occupies the bridge with its tracks is under neither statutory nor common-law liability to bear any portion of the cost of the construction of the bridge. Such a company, however, may be compelled to pay to the county a reasonable compensation for the special use and occupation of the bridge with its necessary tracks, poles and wires.

2. In ascertaining what is a reasonable compensation by a street railway company for the use of a county bridge the court may take into consideration that the special use by the street railway company will necessarily shorten the life of the structure as against its probable duration of existence were its use to be confined to pedestrians or ordinary vehicles. The mere fact that the evidence fails to disclose in dollars and cents any sum which in the opinion of the witnesses would fairly measure such liability, will not prevent the court from reaching a conclusion on the subject. Point Bridge Co. v. Pittsburg Rys. Co., 240 Pa. 105, distinguished and explained.

Argued Nov. 12, 1913. Appeal, No. 67, Oct. T., 1913, by plaintiff, from decree of C. P. Venango Co., Eq. D., No. 5, April T., 1912, on bill in equity in case of Citizens' Traction Company v. John L. Shaffer et al., Commissioners of Venango County. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Decree modified.

Bill in equity to fix the compensation to be paid by a street railway company for the use of a county bridge.

CRISWELL, P. J., found the facts to be as follows:

1. The plaintiff is a street railway corporation organized and existing under the general Act of May 14, 1889, P. L. 211, owning and operating lines in the transportation of passengers and light freight in the city of Oil City, city of Franklin, both cities of the third class, boroughs of West End and Rouseville and townships of Cranberry, Sugarcreek and Cornplanter in the said county of Venango.

2. A county bridge connects Seneca street in that part of Oil City north of the Allegheny river with State street in that part thereof south of the river constituting a portion of the highways therein.

3. By ordinance duly enacted the said city of Oil City granted the right and consented to the use and occupancy of the said county bridge and the approaches thereto by the plaintiff with its tracks and cars in so far as it had power by law to so grant and consent.

4. For the discharge of its corporate duties and properly, expeditiously and advantageously accommodate the public it is necessary that the plaintiff occupy and use the said bridge with its tracks, electrical equipment and cars.

5. By writing bearing date February 27, 1912, the plaintiff entered into a contract with the county of Venango relative to the manner of installing its tracks and necessary equipment on the said bridge and approaches and the manner of the operation of its cars thereon, including certain provisions relative to subsequent maintenance and repairs wherein and whereby it is expressly provided and agreed that "this contract shall cover all matters and things relating to the manner and cost of installation of said company's equipment, the maintenance thereof and the use of said bridge by said company, excepting only what amount or sum,

under all the circumstances, shall be paid annually by said company on account or by reason of said company's use and occupancy of said bridge and approaches, whether as rental, share of up-keep or maintenance, or otherwise, and also such proportionate part, if any, of the original cost of said bridge, which under the circumstances should be paid by said company to said county, the said annual sum above mentioned for the use and occupancy of said bridge, and the proportionate part, if any, of the original cost of said bridge, which under the circumstances, should be paid by said company to said county, shall be determined by the court of proper jurisdiction of said county of Venango," it being therein further agreed that the company should not operate any car or cars over or upon the bridge until such annual and other payments shall have been determined and paid or secured as therein provided, the said contract, a true copy of which is attached to the plaintiff's bill of complaint, marked exhibit "A" and made a part thereof, being also referred to and made a part of these findings.

6. The tracks and equipment of the plaintiff company have been laid and installed on the said bridge and its approaches substantially as provided in said contract and the company desires to enter upon the use of the bridge with its cars and transporting facilities and prays that the court shall fix the compensation to which the county is entitled. In this prayer the defendants by their answer join.

7. The use of the bridge contemplated at present is the passage thereover of about eleven cars per hour, with an average of about eight or ten passengers each, from 6 A. M. to midnight, but this use may be increased or decreased and at times will be much increased.

8. The foot passengers daily crossing the bridge range from 8,000 to 13,000; vehicles from about 430 to 680; automobiles from about 275 to 520.

9. The bridge was constructed with a roadway thirty

feet wide, and has a length of about 1,121 feet. A bridge the same length and at the same place, with a twenty-four foot roadway, might have been erected for about $30,000 less.

10. The bridge which occupied the site of the new structure had been crossed by the railway company under an agreement with the county which expired with the life of the bridge.

The new bridge was designed and constructed in contemplation of its continued use by the railway and with a view to accommodating such use and the general public travel and traffic thereon as well. Whether or not a bridge with a roadway twenty-four feet wide would have been fairly and reasonably sufficient to accommodate the public use, present and prospective, not including that of the railway, is a controverted point. There was, however, no contention that a thirty-foot roadway was not sufficient for both, and it follows that a less width of way would accommodate the general public did the railway not enter thereon, and it is concluded that a twenty-eight foot way would in such case have been sufficient. By an approximation from the data referred to this would have cost $15,000 less than the present structure, and it is concluded that upon this sum the railway company should pay interest to the county at the rate of four per cent per annum.

11. From the conflict of evidence on the subject it is concluded that the installation and use of the railway will to some extent affect the life of the bridge and that an annual contribution should be made on this account of $300.

12. It is likewise found that the annual expense of supervision and general maintenance attributable in part to the extraordinary use of the bridge by the plaintiff, including painting, reflooring, general caretaking and incidentals, is the sum of $2,000, and of this amount the plaintiff should equitably contribute the one-fifth, or $400.

13. The foregoing are all exclusive and outside of the particular obligations in the line of installation, maintenance and repairs assumed by the company under the agreement of February 27, 1912.

*Error assigned* was the decree of the court.

*Wm. J. Breene*, with him *Edmund C. Breene*, for appellant.—The appellant contends that the finding that the bridge was designed and constructed in anticipation of its proposed use and occupancy and that on such account it should pay $600 annually or any sum whatever is absolutely and unqualifiedly without support in the proofs and in legal effect is violative of the recognized principles of public policy. A charge may be imposed by a city or borough or township in the grant of its consent to use and occupy the highways for street railway purposes within its limits, and, second, where proper municipal consent has been given to occupy a county bridge, the county may enforce as a condition precedent to the right to use and occupy, only such charges as are reasonably necessary to maintain the bridge up to the recognized standard of required public safety as made necessary by the street railway's superimposed use: Allegheny v. Ry. Co., 159 Pa. 411; Point Bridge Co. v. Pittsburg Rys. Co., 240 Pa. 105; Cater v. Tel. Exchange Co., 63 N. W. Repr. 111.

*Wm. M. Parker*, with him *J. D. Trax*, and *W. H. Weigle*, for appellee.—It is well settled that a county bridge is under the control of the commissioners of such county and cannot be occupied by a street railway company without their consent, but such consent cannot be arbitrarily withheld and where, as in this case, a street railway company has a proper charter, has secured the consent of the municipality in which it is located, and a county bridge forms part of a highway, the traction company may occupy such bridge subject to a

proper arrangement with the county: Berks County v. Reading City, etc., Ry. Co., 167 Pa. 102; Larue v. Railway Company, 170 Pa. 249.

The street railway wishing to use a bridge must bear the entire expense of making it available for its purposes: Larue v. Ry. Co., 170 Pa. 249; Berks County v. Reading City, etc., Ry. Co., 167 Pa. 102; Lawrence County v. Ry. Co., 8 Pa. Superior Ct. 313.

OPINION BY HEAD, J., April 20, 1914:

The findings of the learned trial judge, and his discussion of the law arising thereon, which will be reported, clearly indicate the questions now before us for review. There is nothing in the record to estop the county advancing and enforcing such claim for the use and occupation of the county bridge by the plaintiff company as may be warranted by law. It is true, during the life of the old bridge there existed a contract between the county and the company regulating the use of that bridge by the company. That contract by its terms ended with the existence of the old bridge and left the parties without any contractual relation whatever. It is true also that when the county had determined to take down the old bridge and replace it with a structure that would be at once safe and adequate to meet the public necessities, negotiations were entered into with the purpose of determining in advance the size and character of the new bridge and the conditions on which it might be occupied and used by the street car company. These negotiations, however, proved fruitless, and the plaintiff company formally and in writing withdrew from any further participation in the action to be taken by the county. The commissioners then determined for themselves the kind and character of a structure they would erect and proceeded to award the necessary contracts. During the course of construction an agreement in writing was entered into between the parties which provided for the installation

by the company of that portion of its tracks and overhead structure which ought reasonably to be built during and as part of the bridge construction. This agreement further provided that upon the completion of the bridge the company should have the right to operate its cars across the same under certain regulations specified in the instrument. At that point the ability of the parties to agree seems to have reached its limit, save in one further respect. This was that the compensation, if any, to be paid by the street car company, should be ascertained by the court of common pleas of Venango county, and a stipulation was entered into for the beginning of the proceedings necessary to attain that result. The present bill was filed for that purpose, and the statement we have made demonstrates that as to this question both of the parties are standing on their legal rights.

The learned judge below finds, as a fact, that the bridge built by the county was constructed of greater width and strength than would have been required had it been designed only to accommodate travel by foot passengers and ordinary vehicles. Because of this fact he concludes that the county was vested with a legal right to assess a certain portion of the cost of construction directly against the street car company, and thus indirectly upon that portion of the public which traveled across the bridge in street cars. The amount of the construction cost thus to be assumed by the company, the learned judge fixed at $15,000. He did not, however, require that this sum should be paid in bulk or presently, but did decree that the company should annually pay to the county four per cent on the sum named, to wit, $600.

We have searched in vain for any authority to support such a charge. There is no statute which places any such burden on a street car company. There exists no contractual obligation to bind the company to assume a portion of the county's burden in this respect. There

is no decision to which we have been referred declaring the existence of any common-law liability on the part of a company in such cases to bear a definite or indefinite share of the cost of the construction of a county bridge. It is doubtless true that the commissioners, in determining the size and quality of the new bridge to be constructed, took into consideration the fact, then apparent from their experience, that a very considerable portion of the public whose interests spurred them to action would utilize the bridge by travel on street cars. They did no more than intelligently perform the duty imposed upon them by the law in deciding to erect a structure that would reasonably accommodate all lawful kinds of travel then fairly within their purview. We do not mean to say by this that the street car company would have had any standing to proceed by mandamus or otherwise to compel the commissioners to build the bridge of any given size. In that respect they were invested by the law with discretion, and their honest judgment could not be interfered with. But having, in the exercise of their right and in the discharge of their duty, determined upon a bridge adequate to meet the demands of all of the traveling public in that community, we can perceive no sound reason why they may relieve the county treasury by assessing a part of the cost of construction to a street car company, transporting a portion of the public in one way, any more than they could further divide the common burden by imposing other parts of the cost of construction on omnibus companies, automobile companies, and the like, in whose vehicles other portions of the traveling public might utilize the county bridge. An examination of the authorities to which we shall presently refer on the next branch of the case will reveal no warrant for any such charge. They do, however, clearly point out the nature and extent of the common-law liability of a street car company under such circumstances, and thus, by the operation of the familiar legal maxim, exclude from such

liability any part of the cost of the construction of a county bridge. We must therefore conclude that the first item of charge in the decree complained of is without legal warrant, and to that extent at least the decree must be modified.

The second and third items of the decree we will consider together, as in essence and substance they are identical. As we understand the opinion of the learned trial judge, they were separated only that he might the more clearly and fairly indicate the considerations underlying his conclusions and thus facilitate any review of the decree. It ought not to be necessary here to undertake to consider in detail the cases of Berks County v. Railway Co., 167 Pa. 102; Larue v. Oil City Ry. Co., 170 Pa. 249; Beaver County v. Telegraph Co., 219 Pa. 340; Beaver County v. Traction Co., 229 Pa. 565. For the present it is sufficient to say they furnish ample authority for these conclusions. A county is the owner of the structure of a county bridge erected by it and paid for by the public taxes. That ownership, however, differs in kind from the individual ownership of private property. It owns the structure but as a trustee for the public whose money built it, and cannot arbitrarily deny the right to the use of it to a corporation engaged in the business of transporting the public. But although it may not do this, it is still invested with the common-law right to impose reasonable regulations on the public using its structure and to exact from a corporation, even though a quasi-public one, reasonable compensation for the special use and occupation of the bridge by such corporation with its necessary tracks, wires, etc. In determining the amount of such reasonable compensation, the law is unable to afford any precise standard which will measure with accuracy the amount to be paid in any particular case. Manifestly the considerations on which such a question should be determined must vary with the circumstances surrounding each case as it arises. It would hardly be denied

that if such a company is to be subjected to the payment of any sum at all, a jury, or, in an equity proceeding, a chancellor, would necessarily take into account such considerations as the increased cost of maintenance, repair, inspection, and the like, brought about in whole or in part by the special use of the structure by the corporation in question. Of precisely the same character, as we view it, would be the consideration that such use would necessarily shorten the life of the structure as against its probable duration of existence were its use to be confined to pedestrians or ordinary vehicles. Even without the aid of expert testimony to that effect, men of ordinary reason and intelligence would conclude that the impact of a loaded street car, although traveling at a moderate rate of speed, would be attended with such jar and vibration as would naturally increase the cost of the upkeep of the structure and shorten the period of its usefulness. In the latest utterance of the Supreme Court on this subject, Point Bridge Co. v. Pittsburg Rys. Co., 240 Pa. 105, to which we shall again refer, it was said by Mr. Justice STEWART, speaking for the court, that such a consideration would properly enter into the determination of the amount of a license fee which might be imposed by a city upon a street car company by virtue of its right to exercise the police power of the state. We quote: "Many of the specific matters here included were proper for consideration in view of the issue, but only however as they were of help in determining what additional cost by way of repair and maintenance resulted from the extraordinary use to which the bridge was put by the defendant company. If there was evidence in the case showing that in consequence of such extraordinary use the life of the bridge would be shortened, such evidence called for consideration, but certainly not as forming a basis for a charge against the defendant company sufficient to replace the bridge at the end of its life. To whatever extent such extraordinary use of the bridge contributed

in shortening its life, for such contribution the company might well be charged; but to charge it with the whole cost of a new structure would be beyond all reason." We are of opinion, therefore, that the learned trial judge was right in considering, as one of the elements material to the determination of the amount to be paid by the plaintiff company, the extent to which its special use would contribute to shorten the life of the structure.

But it is urged in the very able brief of appellant's counsel that the evidence fails to disclose in dollars and cents any sum that in the opinion of the witnesses would fairly measure such liability. It does not follow, however, from this that the jury or the trial judge could properly reach no conclusion on that subject. The books are filled with cases where verdicts and decrees have been sustained although the evidence furnished no exact standard to enable the trial tribunal to declare with precision the amount of the liability. Thus where a husband brought an action to recover the pecuniary value of the life of his wife, a woman sixty-six years of age, which life had been lost, as alleged, through the negligence of the defendant, it was contended that the jury could find but nominal damages because the evidence pointed to no exact sum respecting that value he sought to recover. The Supreme Court held that position to be untenable and sustained a verdict for the plaintiff: Del. Lack. & W. R. R. Co. v. Jones, 128 Pa. 308. In McCleary v. Pittsburg Rys. Co., 47 Pa. Superior Ct. 366, the same contention was made in a case where the life of an infant child had been lost through the negligence of the defendant. This court refused to sustain the contention. In Pierce v. Lehigh Valley Coal Co., 40 Pa. Superior Ct. 566, the action was for damages for injury to the land of the plaintiff brought about by the discharge in the river of culm by the defendant company and its consequent deposit by the action of the stream upon the land of the plaintiff. The defendant proved that many other coal companies also dis-.

charged culm into the same stream, and contended that because the evidence failed to disclose with any precision just what culm reached the land of the plaintiff and the exact portion of it that came from the defendant's mines, there was no basis for any recovery beyond nominal damages.  This court denied the soundness of the contention.  In a multitude of cases it has been held that where injuries to human beings resulted from negligent acts of another, the amount of pain and suffering undergone by the injured plaintiff was a proper consideration for the jury in determining the amount of the damages.  The law has never pretended to require that a witness must first express some opinion as to the amount to be allowed in such cases before there would be a foundation for a verdict.  The attempt to have a witness furnish such an opinion would on its face be little less than absurd.  So in the recent case of Ehly v. The Philadelphia Ry. Co., ante, p. 512, this court said: "The amount to be allowed as compensation for such pain and suffering cannot be measured by any known rule of law.  It has always been and must necessarily be determined by the good sense and conscience of the jury as applied to the particular facts of the case following proper instructions from the trial judge."  We conclude therefore that the learned judge below, in the second and third items of the decree entered, rested those items on considerations which rightfully entered into his conclusion, and that he was not precluded from determining the amount that ought to be paid merely because the evidence did not disclose in dollars and cents what that amount should be.  Our functions in such a matter are purely appellate, and we are unable to say, after a review of the evidence, that the decree, in respect to these two items, is so unreasonable or so unconscionable as to warrant us in disturbing it.

We have finally to consider whether the recent case of Point Bridge Co. v. Railways Co., 240 Pa. 105, has overthrown the law as it was theretofore declared to be

in cases to which we have referred. The opinion of the court does not purport to overrule any one of them. It is true that in the dissenting opinion of Mr. Justice MOSCHZISKER such is declared to be the effect of the case. Manifestly, on this point, he was not in harmony with the majority of the court. Otherwise, there would be no occasion for a dissenting opinion. Moreover, the majority opinion declares in terms not only that there was no intent to overrule the earlier cases but that there is in fact no lack of harmony between them and the case last disposed of. Mr. Justice STEWART says: "What we have said in discussing the general subject under consideration may at first glance seem to conflict with what we have said in several of our cases, but any question as to this will be removed upon a careful study of these cases." The difference between that case and the one at bar, as to the basic proposition determined by the Supreme Court, seems to us to be this: The city was vested with the absolute control of the street or highway carried by a bridge across the river from one portion of the city to another. The railways company applied for and received the municipal consent to occupy with its tracks that street on such conditions as to the payment of money or otherwise as the city chose to exact. The passage of the necessary ordinance and the occupation of the street by the company with its tracks created a contract between the city and the company binding upon both. · At that time the bridge which carried the street was the property of a private bridge company. The street car company necessarily had to make its own terms with that company. When the city later, for the common good and the benefit of the entire public, bought the outstanding title of the bridge company, could it use that title thus later acquired to enable it to increase the compensation for which it had previously agreed the street car company might occupy its street? This question was answered in the negative. If we are right in our assumption that this was the cru-

cial question in the case, it is clear enough to us that our conclusions, already announced, if sound under the earlier decisions, are not in any way shaken by the doctrine of Point Bridge Co. v. Railways Co., 240 Pa. 105, referred to.

The decree entered by the learned judge below is modified by striking from it the first item of charge therein contained, to wit, "rental on account of design and construction including increase in width of bridge $600," and as thus modified the decree is affirmed. The costs of this appeal to be equally paid by the appellant and appellee.