# Pittsburg and West End Railway Company, Appellant, v. Point Bridge Company.

*Street railways—Bridge company—Tolls—Jurisdiction —Equity.*

A court of equity has no jurisdiction to enforce the collection of tolls by a bridge company from a street railway company which has a charter right to use the bridge of the bridge company, merely because a decree had been entered fourteen years before at the instance of the bridge company fixing a certain rate of tolls to be paid by the railway company for a period of five years. Such tolls in arrears, like rent in arrears, can only be collected in an action at law.

Argued Oct. 22, 1908. Appeal, No. 119, Oct. T., 1908, by plaintiff, from degree of C. P. No. 2, Allegheny Co., April T., 1892, No. 113, on bill in equity in case of the Pittsburg and West End Passenger Railway Company v. the Point Bridge Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an injunction. Before OVER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court entered the following decree:

And now, to wit: May 16, 1908, this cause came on to be further heard at this term, and was argued by counsel, and, upon consideration thereof, it is ordered, adjudged and decreed as follows, to wit:

1. That the Pittsburg and West End Passenger Railway Company pay to the Point Bridge Company, as compensation or tolls for all cars which passed over the Point bridge from June 1, 1896, to November 12, 1897, at the rate of $8,000 per annum, the total sum of $11,550, with interest thereon at the rate of six per cent, from November 12, 1897, amounting to $7,260, making a total of $18,810.

2. That the Pittsburg and West End Passenger Railway Company pay to the Point Bridge Company, as compensation or tolls for cars which crossed the Point Bridge from November

12, 1897, to November 12, 1907, at the rate of $8,000 per annum, the total sum of $80,000, together with six per cent interest thereon, computed upon the basis of the monthly payment due of $666.66, amounting to $26,050, making a total of $106,050.

3. That until further order of this court, the Pittsburg and West End Passenger Railway Company shall pay to the Point Bridge Company as compensation for such use of its bridge, in quarterly payments, at the rate of five cents per single trip for each car crossing said bridge.

4. That the costs of this proceeding, accruing from the filing of the petition by the Point Bridge Company for the adjustment of tolls, be paid by the respondent, the Pittsburg and West End Passenger Railway Company.

And now, to wit: May 16, 1908, this cause came on to be further heard at this term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows, to wit:

1. That the Pittsburg and West End Passenger Railway Company pay to the Point Bridge Company, as compensation or tolls for all cars which passed over the Point bridge from June 1, 1896, to November 12, 1897, at the rate of $8,000 per annum, the total sum of $11,550, with interest thereon at the rate of six per cent, from November 12, 1897, amounting to $7,260, making a total of $18,810.

2. That the Pittsburg and West End Passenger Railway Company pay to the Point Bridge Company, as compensation or tolls for cars which crossed the Point bridge from November 12, 1897, to November 12, 1907, at the rate of $8,000 per annum, the total sum. of $80,000, together with six per cent interest thereon, computed upon the basis of the monthly payment due, of $666.66, amounting to $26,050, making a total of $106,050.

3. That until further order of this court, the Pittsburg and West End Passenger Railway Company shall pay to the Point Bridge Company quarterly statements of the number of cars crossing the Point bridge from and after November 12, 1907, and pay to the Point Bridge Company, as compensation for such use of its bridge, in quarterly payments, at the rate of five cents per single trip for each car crossing said bridge.

4. Either party hereto at any time may, during the continuance of this order, make application to the court, and for proper cause, may move a modification of paragraph third of this decree or such other and further order in this case as may, under the circumstances then existing, be proper.

5. That the costs of this proceeding, accruing from the filing of the petition by the Point Bridge Company for the adjustment of tolls, be paid by the respondent, the Pittsburg and West End Passenger Railway Company.

*Error assigned* was the decree of the court.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellant. The court may not enter a money decree for back tolls including a time covered by a pending suit at law: Beaver County v. Central Dist., etc., Co., 219 Pa. 340; City of Eau Claire v. Payson, 107 Fed. Repr. 552.

*A. M. Thompson,* with him *W. B. Rodgers* and *Chas. K. Robinson,* for appellee.—The court had jurisdiction over the parties in this case and the power on petition to determine the compensation which should be paid to the bridge company: Winton's App., 97 Pa. 385; Root v. Woolworth, 150 U. S. 401 (14 Sup. Ct. Repr. 136); Conklin v. Foster, 57 Ill. 104; Hohman's App., 127 Pa. 209.

OPINION BY MR. JUSTICE BROWN, January 4, 1909:

In 1892 the Pittsburg and West End Passenger Railway Company, the appellant, having by its charter and an ordinance of the city of Pittsburg the right to operate a street railway over certain streets in the city to the Point bridge, and to cross the same, filed a bill to enjoin the Point Bridge Company, the appellee, from interfering with its right of passage over the bridge. On this bill a decree was made, restraining the bridge company from interfering with the right of the complainant to use the bridge and directing that for the use of it there should be paid $8,000 per annum, payable monthly, with the provisos that, "this right shall not control for the use of

said bridge for a longer period than five years from this date,"
and that, "either party hereto at any time may, during the
continuance of this order, make application to the court, and,
for proper cause, may move a modification of this decree or
such other and further order in this case as may, under the cir-
cumstances then existing, be proper." This decree was af-
firmed: Pittsburg and West End Passenger Railway Co. v.
Point Bridge Co., 165 Pa. 37. Since the expiration of the five-
year period fixed in the decree no agreement has been made
between the railway company and the bridge company as to
the rates of toll to be charged, and none has been paid. On
April 4, 1896, the stock of the Point Bridge Company was sold
to the city of Pittsburg, and all of it is now owned by the city
except eight shares of the common stock, six of which are held
by the following municipal officers, each owning one share:
George W. Guthrie, mayor of the city; John B. Larkin, con-
troller; J. F. Steele, treasurer; J. P. Shaw, director of the
department of charities; E. R. Walters, president of select
council; Thomas F. McGrath, a member of common council.
One of the remaining eight shares stands in the name of Frank
Ridgway, deceased, who was director of the department of
public safety, and the other in the name of James W. Clarke,
deceased, who was director of the department of public works.
Since the purchase of this stock by the city the Point bridge
has been under the direct supervision and control of the de-
partment of public works of the city, and no tolls have been
demanded from anyone except the Pittsburg and West End
Passenger Railway Company. By lease dated January 1, 1898,
that company leased to the West End Traction Company all
of its lines of railway and franchises, and, by leases from the
West End Traction Company and its lessees, the right is now
vested in the Pittsburg Railways Company to operate cars on
the line of the Pittsburg and West End Passenger Railway
Company and to cross the said bridge. The few remaining
facts found by the court below need not be repeated, for they
throw no light on the fundamental question of its jurisdiction
in this proceeding.

On October 11, 1906, the appellee presented a petition to

the court below, praying for a decree to fix the rate of compensation which the Pittsburg and West End Passenger Railway Company should pay it for the use of the bridge in the operation of cars over it from November 12, 1897, to date. We know of no place in equity proceedings or pleadings to which this petition belongs, and the learned pleaders for the appellee have not told us how they designate it. The averments leading up to the prayer are but recitals of conditions existing between November, 1897, and October, 1906, and while they are evidently relied upon as an excuse for the delay in instituting this proceeding, there is nothing in them to justify it.

The error into which the court below fell was that, by the decree of 1892, a "franchise" or "right" was granted to the appellant to operate its cars across the bridge. Its right to use the bridge as a part of one of the highways of the city existed independently of any action by the court, and could not have been taken from it by that tribunal. The right belonged to it under its charter from the moment the city of Pittsburg, by the ordinance of March 31, 1879, granted it permission to operate a street railway over certain streets from Fifth avenue and Liberty street to Stone Tavern. When the bridge company in 1892 attempted to interfere with the exercise of this right, the bill was filed to restrain it, and the complainant asked the court to fix and declare what reasonable toll should be paid in the future. In making the decree prayed for the court but recognized the clearly existing right of the railway company to cross the bridge, which right it not only did not give, but could not have given to the appellant. Under art. XVII, sec. 9 of the constitution that right could have come only from the city, from which it did come, and all that the court did was to impose, at the request of the complainant, the terms for a fixed period upon which its cars should cross the bridge. The words of the decree are, "this rate shall not control for the use of said bridge for a longer period than five years from this date," and then follows leave to either party to make application during the five years, but not afterwards, for a modification of the decree and for such further order as, "under the circumstances then existing," might be proper. After the expiration of the five-

year period no right was preserved or continued to the appellee by the decree. On November 12, 1897, it had served its purpose, and thereafter could be invoked only to enforce, in a proper proceeding, payment of the tolls that had accrued during the five-year period. It was not a fixed basis for what the railway company should continue to pay and the bridge company receive after that period, and this is conceded by the appellee in its averment that the rate after November 12, 1897, should be much greater than $8,000 a year. After November, 1897, the appellee never fixed any rate of toll to be paid by the railway company and never attempted to collect anything from it for the use of the bridge from that time until it asked the court, in October, 1906—nearly nine years afterwards—to fix the amount to be paid for back tolls. The only reason given for this present proceeding is that, as the court, in 1892, had fixed, at the request of the railway company, the rate to be paid by it for the use of the bridge for five years, it ought now, against the protest of that company, to so stretch its jurisdiction as to fix back tolls to be paid for ten years. Broad as are the powers of an equity court, they have never been known to reach a controversy between a landlord and his tenant, where the only question is how much back rent is due. This is the bald situation here. Even if the appellee, upon the expiration of the five-year period, or immediately thereafter, might have asked the court for a decree fixing the rate of tolls to be paid in the future, it did not do so, but after nine years resorted to this proceeding in a court of equity to recover for past lawful use and occupation of its property. Though reference is made in it to the proceeding in 1892, the latter forms no part of it. The complainant here was the respondent there in a bill to restrain it from interfering with vested rights, and now, merely because a decree was made in that case, at the request of the appellant, fixing the rate of tolls to be paid for a period of five years, a court of equity is to be made a collecting medium, instead of a court of law, where, and where alone, if there be any liability on the part of the appellant, it is to be enforced by the ordinary action for reasonable compensation for past lawful use and occupation of appellee's property. Authority to sus-

tain the appellee can nowhere be found. Berks County v. Reading City Passenger Railway Co. et al., 167 Pa. 102, cited by the court below and relied upon by counsel for appellee, announces no such doctrine as we are asked to sanction. The court was without jurisdiction either to fix a rate to be paid for the past use of the bridge or to decree payment of any sum, even if one had been agreed upon by the parties.

After June 1, 1896, the city of Pittsburg having at that time control of the bridge, the appellant failed to make further payments, and, upon appellee's amendment to its original petition, which, as amended, may be regarded as one asking the court to enforce payment of a balance due it under the decree of 1892, it was decreed that the appellant pay, for the use of the bridge from June 1, 1896, to November 12, 1897, rental at the rate of $8,000 per annum, with interest, amounting to $18,810. In 1898, upon the correct theory that the decree of 1892 was but a substitute for an agreement between the parties as to the rate of toll to be charged and paid, an action, which is still pending, was brought by the appellee on the law side of the court to recover the amount due from June 1, 1896, to November 12, 1897. That action is an adequate remedy for the recovery of any sum that may be due for the use of the bridge during the five-year period, and to that remedy, invoked by the appellee, we leave it.

For want of jurisdiction by the court to entertain the petition, the decree upon it is reversed at the appellee's costs.