## New Street Bridge Company, Appellant, v. The Public Service Commission.

*Public Service Commission — Public Service Company Law — Bridge companies—Rates—Agreements with street railway companies—Jurisdiction of Public Service Commission.*

A bridge company maintaining a bridge, which connects two segments of a public highway is a public service company subject to the provisions of the Public Service Company Law. The bridge is a structure dedicated to a public use subject only to the right of the company to impose reasonable tolls.

An agreement between a bridge company and a street railway company providing for the crossing of the bridge by the cars of the street railway company and the payment of a certain sum for each passenger carried by the latter company, is a contract regulating rates and as such is subject to the jurisdiction of the Public Service Commission.

Such contracts are made subject to the regulatory powers of the State as conferred in the Public Service Commission and the rates charged thereunder are subject to review by the Public Service Commission.

It is not material that such a contract is made in the form of a lease when it, in effect, regulates the rates to be charged by the utility.

Argued October 29, 1920. Appeal, No. 130, Oct. T., 1920, by New Street Bridge Company, from order of the Public Service Commission on complaint of the Lehigh Valley Transit Company v. New Street Bridge Company, Complaint Docket No. 2372, 1918, and the Public Service Commission of Pennsylvania on appeal. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KELLER and LINN, JJ. Affirmed.

Complaint by Lehigh Valley Transit Company against charges made by New Street Bridge Company for passengers carried by the Lehigh Valley Transit Company over the New Street Bridge.

6, (1921).] Statement of Facts—Assignment of Error.

From the record it appeared that the Lehigh Valley Transit Company on September 18, 1918, filed its complaint with the Public Service Commission alleging that the rates charged, under an agreement between it and the New Street Bridge Company, providing for the right to cross said bridge, were unjust and unreasonable.

The respondent, after filing an answer, presented a petition setting forth that the answer had raised certain legal questions as to the authority of the commission to grant any relief in the premises and asking that such matters of law be heard and determined before proceeding further with the case. The respondent in effect demurred to the complaint on the ground that it dealt with an unexpired contract of lease, made for a definite term of years before the approval of the Public Service Company Law. The commission by its report filed May 18, 1919, held that the respondent was a public utility and that the contract between the complainant and the respondent company covering the period from January 30, 1912, to January 30, 1932, did not preclude the commission from inquiry into the reasonableness of the rates paid by the complainant to respondent, pursuant to said contract in consideration for its right to operate over respondent's bridge. Subsequent to the above order, further hearings were held on the question as to the reasonableness of the rates complained of.

On March 9, 1920, the commission filed its report in which it found that one-third of one cent for passenger, instead of one-half cent, was the maximum, just and reasonable rate that the respondent should be allowed to collect from the complainant for each passenger carried over the respondent's bridge, and the present car charge for the passage of other than passenger cars should be continued. From this order the New Street Bridge Company appealed.

*Error assigned* was the order of the commission.

*William W. Porter,* and with him *George R. Booth,* for appellant.—The Public Service Commission had no jurisdiction to change the provisions of the contract between the two public service companies. The agreement was a lease and not subject to the regulatory powers of the commission in regard to rates: The Express Cases, 117 U. S. 1; City of Pittsburgh v. Pittsburgh Rys. Co. et al., 8 P. C. R. 441; Beaver County v. Beaver Valley Transit Co., 229 Pa. 565; Point Bridge Co. v. Railway, 230 Pa. 289; Reading City P. Ry. Co. v. Berks County, 246 Pa. 44; Beaver County v. Telegraph Co., 219 Pa. 340; Babbit v. Albion Elec. L., H. & P. Co., 2 Pa. P. S. C. Decisions, 30; Citizens Elec. Ill. Co. v. Jenkin Township L., H. & P. Co., 2 Pa. P. S. C. 152; Pittsburgh & Shawmut R. R. Co., 2 Pa. P. S. C. 1163; Application of Relief Electric Light, Heat & Power Company, 63 Pa. Superior Ct. 1; Wilkes-Barre Co. v. The Public Service Commission, 70 Pa. Superior Ct. 464; Allegheny v. Millville Ry. Co., 157 Pa. 411; McKeesport v. McKeesport & R. P. Ry. Co., 252 Pa. 142.

*R. J. Butz,* of *Butz & Rupp,* and with him *Thomas J. Perkins,* for intervening appellee.—The agreement between the two public service companies in effect regulated the rates to be charged and was subject to the jurisdiction of the Public Service Commission: Chicago & Alton Ry. Co. v. Tranbarger, 238 U. S. 76; Leiper v. Baltimore & Ohio R. R. Co. et al., 262 Pa. 328; Pottsville, etc., Co. v. Public Service Commission, 67 Pa. Superior Ct. 301; Foltz v. Public Service Commission, 73 Pa. Superior Ct. 24; Scranton v. Public Service Commission, 73 Pa. Superior Ct. 192.

*Berne H. Evans,* and with him *John Fox Weiss,* for the Public Service Commission.

Opinion by Henderson, J., March 5, 1921:

The appellant is a corporation maintaining a bridge across the Lehigh river in New street in the City of

Bethlehem.  The intervening appellee is a street railway company operating a street car line over the appellant's bridge.  The use of the bridge by the railway company is authorized and regulated by an agreement dated July 2, 1910, which among other things fixes the compensation to be paid the bridge company for the use of the bridge; the basis for such compensation being the number of passengers carried by the railway company.  On the complaint of the latter company, and after due proceedings had, the compensation provided for in the contract was reduced by the order of the Public Service Commission from one-half a cent for each passenger carried by the railway company across the bridge in one direction, to one-third of one cent for each of such passengers.  The appeal is from this order.  The jurisdiction of the Public Service Commission is attacked on the ground that the contract between the bridge company and the railway company is a lease; that the consideration therein recited is not a rate, fare, toll or charge of a public service company within the meaning of the Public Service Company Law; that the contract is not a rate or service contract, and that it is not therefore within the cognizance of the commission.  It seems not to be contended that the appellant is not a public service corporation.  It is provided in section 1 of article I of the Public Service Act that "the term 'public service company,' when used in this act includes......bridge corporations."  The appellant having been incorporated solely to erect and maintain a bridge on the street referred to is within the terms of the statute therefore.  Moreover, at common law a bridge in a public highway is a part thereof.  A corporation operating such a structure sustains the same relation to the public as does a turnpike road company so far as the structures of such corporations are dedicated to a public use, subject only to the right of the company to impose reasonable tolls.  The rule of the common law has been adopted in many cases among which are: Rapho v. Moore, 68 Pa. 404; Monongahela Bridge Co. v.

The Pittsburgh and Birmingham Ry. Co., 114 Pa. 478; Erie County v. The Com., 127 Pa. 197; Pittsburgh and West End Passenger Ry. Co. v. Point Bridge Co., 165 Pa. 37; Reading City Passenger Ry. Co. v. Berks County, 246 Pa. 44; Washer v. Bullitt County, 110 U. S. 546; Com. v. Central Bridge Co., 12 Cushing 244. The bridge of the appellant connects the segments of New street on the opposite sides of the river and establishes the continuity of the street through the city. It is as much a part of the common highway as are the parts which it brings together. The use of the bridge by the public is of the same character as exists on the other portions of the street except as to the charge for crossing. It is, therefore, an instrument of public service and fairly within not only the spirit, but the letter of the Public Service Act. Conceding this to be true, the appellant contends, however, that the writing executed by the parties makes their relation that of lessor and lessee; that the compensation paid is rent; that it is, therefore, one of a class of contracts between public utilities which are purely private in character, which in no way affect the public, and over which the public through its legal agencies has no control. Illustrations of contracts of this class are given in the argument of the learned counsel where leases by public service corporations are given in terminals or stations for restaurants, news stands, barber shops, cigar stands, etc. This is said to be "a leasing of a portion of the facilities of a utility to an individual or corporation for a fixed amount or determined by profits." In support of the argument, it is contended that the bridge company was under no obligation to permit the transit company to use a portion of its bridge for the purpose of laying tracks and operating cars thereon; that the bridge company only held itself as providing a means of passage for private vehicles and pedestrians; that when the transit company built its line, it had one of two things to do, either construct its bridge or persuade the bridge company to make a lease of a portion of

the bridge. Having secured such lease, the rental cannot fall into any class of expense other than operating cost, since the lease was purely a private contract. It is to be observed that the illustrations suggested are of transactions incidental to the principal business of the corporation. It may be admitted that a contract with a boatman permitting him to moor his vessel to the piers of the bridge, or with a sign company granting the right to display advertisements on the bridge, would not be subject to the supervision of the Public Service Commission. Such contracts relate to subjects wholly collateral to the purpose for which the corporation exists. They are to be distinguished, therefore, from the contract under consideration, for the latter is directly in the line of the appellant's business. It maintains a structure for the express purpose of permitting traffic to be conducted on the street. In view of the authorities, the position cannot be maintained that the appellant company is under no obligation to permit the railway company to use the bridge. Assuming as we must that the latter had obtained municipal consent to occupy the street, and that the bridge was of sufficient strength, or could by reasonable means be made sufficiently strong to support the service, the bridge company could not deny to the railway company the right of passage for its cars under such regulations as would protect the rights of the bridge company: Pittsburgh and West End Passenger Ry. Co. v. Point Bridge Co., supra; Pittsburgh and West End Passenger Ry. Co. v. Point Bridge Co., 223 Pa. 133; Reading City Passenger Ry. Co. v. Berks County, supra; Lawrence County v. New Castle Electric Street Ry. Co., 8 Pa. Superior Ct. 313. Under these decisions the appellant is subject to the operation of the Act of May 14, 1889, P. L. 211, granting to street railway companies the right to use the unoccupied streets of a municipality with the consent of the proper authorities; but the case does not necessarily depend on the principle there announced, for the railway company is already in

occupancy of the street and is using the bridge with the consent of the owner.   Rails are laid to permit the movement of cars and the electrical appliances supplying power for such movement are attached to the appellant's structure.   These facilities, in connection with the bridge, furnish an opportunity for transit of a special character, but of a public nature.   In the respect which relates to the general subject under consideration, it is not different from that existing in the case of trucks, automobiles, omnibuses and other instrumentalities of transportation.   Can the relation thus existing between the appellant and the railway company be excluded from the definition of "service" as given in the Public Service Company Act, where it is made to cover "any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all and every facility used or furnished or supplied by public service companies in the performance of their duty to their patrons, employees and the public, as well as interchange of facilities between two or more public service companies"?   That a bridge is included in the term "facilities" is expressly declared in the statute.   That the railway company is, as a matter of fact, a patron of the bridge company is evident.   It uses the bridge in a service for which bridges are constructed, and pays for such service.   It has also made an "interchange of facilities" by a combination of parts of the bridge with apparatus of the railway company for creating conditions under which the cars may be moved across the bridge.   It seems unnecessary to further discuss the proposition that the relation of the appellant to the railway company is one of public service. Does the contract between the companies take the subject therein provided for out of the operation of the Public Service Law?   The contract is said to be a lease.   It is not declared to be such, however, in the agreement.   The fourth paragraph contains a grant to the transit company of the right and privilege of operating its electric motor cars over the bridge for a period of 20 years com-

mencing on the 30th of January, 1912. The right includes the privilege of the conveyance of passengers, and also the transportation of freight. Reference is made in the third paragraph to "rental and toll charges." The sixth paragraph provides that as compensation for the use of the bridge and in lieu of an annual rental for such use, the transit company shall pay to the bridge company one-half of a cent for each passenger carried by the transit company across said bridge in one direction, as well as the sum of ten cents for each car other than a passenger car moved across the bridge. The same paragraph provides that the aggregate of passengers carried for each six months shall be taken to be the number of passengers on which "rental is to be charged" for the preceding semiannual period. In the eighth paragraph it is required that all payments for "interest and tolls" shall be made on the 30th day of July and January of each year. In the tenth paragraph reference is made to the "nonpayment of rent." It will be noticed that the words rental and tolls are used with reference to the same subject. Our attention has not been called to any statute which authorizes the appellant to lease its property. It was not so authorized in its charter, and it is only inferentially asserted in the argument that it might so do. The compensation provided for in the agreement is not simply for the privilege of laying the rails on the bridge or attaching the electric wires to the superstructure, but for the privilege of moving cars in the regular service of the railway company. If they may lease that privilege, they may with like authority grant a similar privilege to a taxicab company, or a truck company, or an automobile association, or to an individual engaged in like business, and thereby accord privileges of a public nature, for such consideration as might be agreed on, irrespective of the general control of such subjects vested in the Public Service Commission. Such an agreement could not in a strict sense be considered a lease. The case is not to be disposed of however on the lan-

guage used or the intention of the parties in entering into the contract, for if the appellant is a public service company and the service rendered is a public service, it is not within the capacity of the contracting parties to enter into an agreement which would avoid the effect of the public service legislation. The authority of the Public Service Commission includes the power to inquire into and regulate the service, rates, fares, tolls or charges of any and all public service companies. Whether the compensation to the company be rates, fares, tolls or rent, it is clearly "charges." Contracts relating to public service are presumed to have been entered into with the understanding that they were subject to the operation of the police power of the Commonwealth, and whenever that power is lawfully exercised in a manner inconsistent with the enforcement of a contract of a public service company, such contract gives way to the regulatory legislation enacted in promotion of the general welfare. Equality of public service forbids the use by a public service company of any instrumentality by which discrimination favorable to a particular patron can be maintained. The repeated declaration of this principle in numerous recently decided cases renders it unnecessary to enter into a discussion of the basis on which the adjudications rest. The paramount authority of the State in the exercise of its police power may be asserted in the abrogation of such a contract without an invasion of the provisions of the federal and state Constitutions relating to the inviolability of contracts: V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523; Schaper v. Railway Company, 265 Pa. 109; Leiper v. B. & O. R. R., 262 Pa. 328; Wilkinsburg Borough v. Public Service Commission, 72 Pa. Superior Ct. 423; Slate Belt Electric Street Railway Co. v. Public Service Commission, 73 Pa. Superior Ct. 493; Knox v. Lee, 12 Wallace 457; Louisville & Nashville R. R. v. Mottley, 219 U. S. 467. In view of the character of the service rendered by the appellant, and the declarations of the

law contained in the cases cited and to which many others might be added, we are required to hold that the appellant is a public service company; that the service which it renders to the railway company is a public service within the scope of its charter; that the contract between the appellant and the railway company is a contract regulating rates or charges for public service rendered in the exercise of its charter power as a public service corporation, and that these rates and charges are subject to inquiry and regulation by the Public Service Commission.

Exception is taken as to the reasonableness of the rates allowed by the commission. We are not convinced from an examination of the basis of estimates that there was such error in the conclusion of the commission as would require us to find that the action of the commission on this subject is unreasonable.

The appeal is therefore dismissed, and the order of the Public Service Commission affirmed.