## Northwestern Pennsylvania Railway Co. v. Crawford County Commissioners.

*Bridges — County bridges — Street railways — Leases — Lessee's duty to repair bridges — Sale of franchises — Liability of purchaser for repairs of bridges—Injunction.*

1. Where a county leases to a street railway company the use of county bridges at a specified rental, with a duty on the company to repair, and with a right in the county, on default, to remove the tracks on the bridges, and the franchises of the company are sold at judicial sale and become vested in another company, there is no privity of contract between the county and the second company as to repairs made or rents accruing under the lease prior to the judicial sale.

2. In such case, where the county has made repairs during the ownership of the first company, it cannot, after the franchises have vested in the second company, proceed to remove the tracks because the latter company has refused to reimburse the county for the amounts of such repairs, although the lease contains a condition authorizing removal of tracks if lessee fails to pay for repairs. If it attempts to do so, it may be restrained by injunction.

3. Even if the purchasing company were using the bridges without a contract between the county and itself, and against the will of the county, the latter could not summarily remove the tracks. The procedure would be to have the compensation agreed upon, or to have it fixed in an action of *assumpsit*.

4. As to repairs made and rents accruing after the transfer of the franchises, the purchasing company is liable to the county if it continues to use the bridges.

5. In such case, it cannot assert that the contract is unconscionable and ruinous and claim that the county should appeal to the Public Service Commission to have a new contract made.

Bill in equity for injunction. C. P. Crawford Co., May T., 1921, No. 3.

*Thomas & Thomas,* for plaintiff; *O. Clare Kent,* for defendant.

PRATHER, P. J., July 31, 1922.—This case, by agreement of counsel duly filed, came on for final hearing upon bill, answer, replication and testimony taken, and, after argument of counsel, we make the following

### Findings of fact.

1. Defendants are the County Commissioners of the County of Crawford, and plaintiff is an operating or lessee company operating a line of street railway between the City of Erie, through Cambridge Springs, Meadville and Linesville, Pennsylvania.

2. On Feb. 28, 1896, the County Commissioners of Crawford County entered into a written agreement with certain street railway companies, plaintiff's predecessors in title, whereby they rented to said railway companies the use of two certain bridges in Crawford County, known as the Broadford Bridge

and the Race Street Bridge, which bridges were then and are now county bridges.

3. Said lease provided, *inter alia*, for a payment of $250 rental annually for each bridge, payable quarterly, and contained a covenant that the lessee was to bear the cost of necessary repairs on said bridges during the lifetime of said lease, with the condition annexed that if lessee failed to observe its covenants and make such payments of rental and repairs, the county commissioners might, upon five days' notice in writing, remove all the tracks, rails, wires, &c., from any bridge.

4. Said lessee companies thereafter constructed and operated said street railway and in time passed into the hands of a receiver, and later, by foreclosure proceedings, all the rights and franchises of said companies were sold and passed into the hands of the Crawford County Railways Company, which subsequently leased all of said railway to the plaintiff company.

5. Prior to said sales and prior to the date that the plaintiff company came into possession of said railway, the County Commissioners of Crawford County had expended in repairs on said bridges $15,986.91, which, according to the terms of said lease, was chargeable to and payable by said lessees.

6. On or before March 23, 1921, the county commissioners gave written notice to the plaintiff herein that unless it settled and paid the cost of these repairs, they would proceed to tear up the rails and track of plaintiff company over said bridges, whereupon plaintiff filed this bill and obtained a preliminary injunction.

7. Plaintiff's requests for findings of fact and conclusions of law are severally and respectively answered upon the paper submitted, and are filed herewith.

### *Discussion.*

The main question involved is the right of the county commissioners to invoke the forfeiture clause of a certain lease and to remove from certain county bridges the rails and track equipment of plaintiff railway company for the default of its predecessor or predecessors in title to pay for certain stipulated repairs on said bridges as a part of the rental for said use, plaintiff having succeeded as lessor or assignee to the rights and burdens of the original lessee and occupying and operating said railway over said bridges by virtue of said lease.

The lease referred to was dated Feb. 28, 1896, and was between the County of Crawford, lessor, and the Meadville Street Railway Company and the Meadville & Saegertown Railway Company, and the Saegertown & Venango Street Railway Company and the Cambridge & Edinboro Street Railway Company, lessees. By mergers, judicial sales and reorganizations the rights and franchises of said lessee companies have passed to plaintiff, the Northwestern Pennsylvania Railway Company.

The use, occupancy and repairs of two bridges are concerned in this proceeding, known as the Broadford Bridge and the Race Street Bridge.

The rights and franchises affecting the former were sold on mortgage foreclosure Dec. 27, 1919, and the latter on May 2, 1921. Thereafter the purchasers at said judicial sales reorganized under the name of the Crawford County Railways Company. Subsequent to this reorganization the said company leased all of said property and franchises to the Northwestern Railway Company, which latter company was reorganized Jan. 29, 1920. The proceeds of said sales were distributed by order of court.

What are the burdens and benefits of plaintiff company as assignee of the original lessee company?

2 D. & C.

As a street railway enjoys but a qualified right to use a public bridge, it can only exercise this privilege by the consent of the bridge owner or controlling authority. This may be amicably exercised by terms agreed upon, or, failing to agree, compulsorily determined by a proceeding in court: Berks County v. Reading City, etc., Cos., 167 Pa. 102, 119; New Street Bridge Co. v. Public Service Commission, 76 Pa. Superior Ct. 6, 11; Beaver County v. C. D. & P. Teleg. Co., 219 Pa. 340, 344.

The present railway company is using the bridges in question by virtue of the lease of 1896, and it is bound by its terms.

We think the rule of responsibility can be no different than that applicable to any assignment of a grant.

In Fennell v. Guffey, 139 Pa. 341, 344, the Supreme Court, in holding that an assignee of a lessee in an oil lease was bound by its terms, and defining the extent of his liability, said: "But the covenant was in the nature of a covenant to pay rent, and runs with the land. It is settled law that covenants to pay rent or royalty run with the land, and that the assignee of the lease is liable for the payment of all rents or royalties which accrued while he held the assignment of the lease: Borland's Appeal, 66 Pa. 470; Negley v. Morgan, 46 Pa. 281; Bradford Oil Co. v. Blair, 113 Pa. 83; Washington Natural Gas Co. v. Johnson, 123 Pa. 576. It is not denied that the respective instalments sued for became due while the defendant held the lease. The liability of the defendant being precisely the same as that of his assignor, the case is ruled by Wills v. Natural Gas Co., 130 Pa. 222." See Beedy v. Nypano R. R. Co., 250 Pa. 51, 56; Kelly v. Nypano R. R. Co., 200 Pa. 229; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; Hannen v. Ewalt, 18 Pa. 9, 12; McClaren v. Citizens Oil and Gas Co., 14 Pa. Superior Ct. 167, 173; Bender v. George, 92 Pa. 36, 39; Kelly v. Nypano R. R. Co., 23 Pa. C. C. Reps. 177.

It is to be observed that the authorities cited limit such assignee's liability to the rent accruing, or the default accruing, during the period of his tenancy or occupancy.

The rule announced is not out of harmony with the principle stated in Campbell v. Railway Co., 137 Pa. 574; Stewart's Appeal, 72 Pa. 291; Pennsylvania Transportation Co.'s Appeal, 101 Pa. 576; Vilas v. The Milwaukee & Prairie Du Chien Ry. Co., 17 Wis. 513; Smith v. The Chicago & Northwestern Ry. Co., 18 Wis. 21; Mayer v. Fort Wayne C. & L. R. R. Co., 31 N. E. Repr. 567, 132 Ind. 88, to the effect that the purchaser at a judicial sale in foreclosure proceedings is not liable for the general debts or claims against the debtor company.

With reference to the construction of a street railway through a municipality, under the Constitution of this State, the municipality has absolute power to withhold its consent, but when consent is given and the street railway company accepts the terms, "a contract relation arise and the rights of the parties are to be determined by their agreement:" Carlisle & M. St. Ry. Co.'s Appeal, 54 Pa. Superior Ct. 311, affirmed in 245 Pa. 561, 566. See Spring City Borough v. Electric Co., 35 Pa. Superior Ct. 533; Valleys Rys. v. Mechanicsburg Borough, 265 Pa. 222, 226.

Under the authorities cited, we are of the opinion that plaintiff company, assignee as aforesaid, is bound by the terms of the lease with reference to the bridges used, but not liable for rents or repairs accrued or occasioned prior to its purchase.

Even though the lease failed to accurately define the rent, plaintiff company could not avoid payment of a just compensation: Pittsburgh, etc., Ry. Co. v. Bridge Co., 223 Pa. 133, 138.

Northwestern Pennsylvania Ry. Co. v. Crawford County Commissioners.

The principle of liability is well stated in Beaver County v. Traction Co., 229 Pa. 565, 568, as follows: "The defendant (street railway company) never had a right to the free use of these bridges. It had the right under its charter and the consent of the local authorities to use the public highways, including the bridges, but before it could enter upon the latter, it had to gain the consent of the bridge owners, and, if so required, it had to arrange to pay such reasonable compensation by annual rental or otherwise as might be agreed upon or fixed by the court: Berks County v. Reading City Pass. Ry. Co., 167 Pa. 102; Larue v. Oil City Ry. Co., 170 Pa. 249; Lawrence County v. New Castle Electric St. Ry. Co., 8 Pa. Superior Ct. 313. When the bridges were taken over by the county, the liability of the defendant to pay a rental still continued: Beaver County v. Central Dist. & Printing Teleg. Co., 219 Pa. 340. The fact that they then became free highways to the general public would not of itself affect the position of the defendant."

It is admitted about Jan. 29, 1920, that the county commissioners, defendants, sent a notice to plaintiff company that the cost of repairing the bridges used by plaintiff company, made in December, 1918, and January and February, 1919, amounted to $15,986.91, together with the announcement that unless plaintiff company made satisfactory arrangement to pay the same, they would proceed to remove the tracks, rails, etc., from said bridges, as provided in said lease for such default. A similar notice was also received about March 23, 1921.

These declarations of such intention prompted the application for this injunction.

It is to be noted that the breach complained of is non-payment of repairs. In the last notice rent is mentioned, but it seems only incidentally, as the accrued rent was small, if any, the fact being in dispute.

It is undisputed that the repairs claimed were made prior to the foreclosure sales.

It seems clear they are not chargeable to a subsequent owner or lessee, one in no sense privy to the contract at the time the default, debt or claim arose.

It is urged by plaintiff's counsel that the contract is unconscionable and ruinous to plaintiff if its terms be exacted, and that the county should appeal to the Public Service Commission to have a new contract made.

It is doubtful if the Public Service Commission has jurisdiction of the facts: New Street Bridge Co. v. Public Service Commission, 76 Pa. Superior Ct. 6. This we do not attempt to decide.

But why should the county having a contract presumably valid and a determined jurisdiction seek out a new one to declare it invalid? The party seeking to avoid its contract and impeaching its validity cannot thus cast aside or postpone either its contractual or common law obligation to compensate the county for the use of its public bridges.

That an assignee of a valuable franchise concession, right or privilege created by a lease can enjoy its benefits and repudiate the burdens that support the concession and produce the benefits is a startling proposition.

That when such assignee refuses to comply with the covenants of the lease creating its tenancy and defining its terms, the lessor can have no action upon his lease, but must in the first instance apply to the Public Service Commission to have it determined whether the use of a public bridge by a street railway company, as assignee under a lease, is a gratuity or contractual by operation of law is devoid of reason and still more startling.

2 D. & C.

Northwestern Pennsylvania Ry. Co. v. Crawford County Commissioners.

As to franchises to build and operate street railways, the municipal authorities have an absolute right under the Constitution to grant or withhold them, and upon whatever terms they choose; but when once granted, every presumption is in favor of the validity and binding force of the terms agreed upon: Valleys Rys. v. Mechanicsburg Borough, 265 Pa. 222, 226.

No one would urge that a borough or city ordinance evidencing such grant would be repealed or its terms nullified simply because its grantee sold or assigned its road to another street railway company.

Having recognized that county commissioners, as trustees for the public, in control of county bridges have not the absolute power to withhold the use of said bridges by a street railway company, and, therefore, having conceded that in the enforcement of the terms of their grant the principle stated and discussed may be subject to modifying limitations, yet we insist the presumption stated arises in the lease under consideration.

This principle is recognized in Reading City Pass. Ry. Co. v. Berks County, 246 Pa. 44, 54, where the Supreme Court said: "The terms upon which they (the railway company) had a right to use it (the bridge) became a matter of agreement, in the first instance, between them and the county, and when they were unable to agree, the equitable jurisdiction of the court below was properly invoked by the county in its cross-bill for the purpose of determining the terms and conditions upon which the appellants might use it."

Why should a street railway, as assignee of a former street railway company, be bound by the terms of a municipal franchise evidenced by an ordinance or the minutes of a board of supervisors and not be bound by the lease that furnishes it with a roadbed over county bridges? Wherein is the distinction? Such assignee is visited with constructive notice in each instance that the road could not be built without the grants or concessions enumerated.

As to the allegation that the contract imposes unreasonable terms, there is no evidence in support of it, and we cannot assume it to be true.

Is the threatened act unlawful? We think it is.

The default under the lease chargeable to plaintiff company, if any, viz., accrued rent during its operation, is slight. Under such circumstances and the consideration of a doubtful fact, public interest in the continued operation of this railway is of some legal significance.

It is urged that the county has no protection in the prosecution of its claim against an operating company, either insolvent or, as the company contends for itself, unable to meet and satisfy the covenants of this lease.

While we appreciate the significance of this fact in the mind of the county commissioners, it cannot control the operation of the law.

If there is any means of requiring the operating company to give security for its compliance with the terms of the lease, the county can invoke it. This might have been done in the first instance: Berks County v. Reading City, etc., Cos., 167 Pa. 102, 119.

With reference to our conclusion that the threatened tearing up of plaintiff's tracks is unlawful: Plaintiff company, as an original operator or lessee thereof, having secured municipal consent to build its road, might have compelled a bridge company or the county in charge of a county bridge, either in equity or in an equitable proceeding, to permit the use of such bridge by the street railway upon proper terms agreed upon or determined by the court: Berks County v. Reading City, etc., Cos., 167 Pa. 102, 119; Pittsburgh & West End Pass. Ry. Co. v. Point Bridge Co., 165 Pa. 37.

If we assume, which we do not concede, that plaintiff company is occupying the bridges in question without a contract and against the will of the county,

it could not high-handedly and by force eject it therefrom. The procedure would then be to have the compensation agreed upon or to have it fixed in an action of *assumpsit.*

In Pittsburgh, etc., Ry. Co. *v.* Bridge Co., 223 Pa. 133, 139, in a proceeding in equity to assess compensation for the use of the bridge, the Supreme Court, holding a court of equity could not be made a collecting medium instead of a court of law, where the action was for "compensation for past lawful use and occupation," said: "The court was without jurisdiction, either to fix a rate to be paid for the past use of the bridge or to decree payment of any sum, even if one had been agreed upon by the parties:" Beaver County *v.* C. D. & P. Teleg. Co., 219 Pa. 340, 344; Beaver County *v.* Beaver Valley Traction Co., 229 Pa. 565, 569; Citizens Traction Co. *v.* Shaffer, 56 Pa. Superior Ct. 552, 554.

It, therefore, follows that the remedy for the breach of the terms of this lease, so far as involved in this case, is by an action at law.

### Conclusions of law.,

1. There is no privity of contract between the County of Crawford and the plaintiff company as to repairs made or rents accruing under the said lease prior to the judicial sales, after which plaintiff came into possession of the franchise of said street railway company.

2. The injunction heretofore granted should be made perpetual.

3. Costs should be paid by defendant.

Now, July 31, 1922, let a decree *nisi* be prepared and served according to the rules of court, and if no exceptions shall be filed thereto, the same shall be made final *sec. reg.*                    From Otto Kohler, Meadville, Pa.